UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:16-CR-5-KKC-HAI-12 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| MICHAEL DAUGHERTY, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from Chief Judge Caldwell (D.E. 820), the Court considers reported violations of supervised release conditions by Defendant Michael Daugherty. This is his second revocation.

Chief Judge Caldwell entered a judgment against Defendant in August 2017 following a guilty plea to violating 18 U.S.C. § 922(g)(3), which prohibits firearm possession by a person who unlawfully uses drugs. D.E. 730. Defendant received a prison sentence of 21 months, followed by a three-year term of supervised release. *Id*. Defendant began his first term of supervised release on February 23, 2018.

Defendant's first revocation proceedings began with the issuance of a May 9, 2018 report from the United States Probation Office ("USPO") that charged nine violations. Defendant admitted all nine violations. These included that he failed to participate in a required drug abuse treatment program, that he failed to attend a required GED program, that he used and possessed marijuana, that he used and possessed buprenorphine, that he used and possessed methamphetamine, and that he failed to truthfully answer all questions asked by the probation officer. *See* D.E. 799. Defendant's release was revoked, and he was sentenced to ten months of

imprisonment followed by 26 months of supervised release. D.E. 805. Among his special conditions of supervision was a requirement that, upon release, he reside at a residential re-entry center for four months. *Id*. at 6. Defendant was released from custody on March 8, 2019, and was immediately admitted to Dismas Charities Manchester.

## I.

On May 7, 2019, the USPO submitted the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. According to the Report, on May 3, 2019, staff at Dismas Charities noticed that Defendant "and other residents were acting erratically and were suspected to be under the influence of an unlawful substance." Staff collected a urine sample from Defendant. Instant testing yielded positive results for amphetamine and methamphetamine. The specimen was sent to Alere toxicology. The probation officer spoke with Defendant over the phone on May 6, and Defendant admitted that he used methamphetamine on May 3. Defendant was terminated from Dismas Charities Manchester on May 7, 2019. The Terminal Letter from the re-entry center is attached to the Report. After the Report was issued and the initial appearance was conducted, urinalysis results were obtained from Alere on May 11 that confirmed the presence of amphetamine and methamphetamine.

Violation #1 charges a violation of the condition prohibiting the unlawful use of a controlled substance. Based on Defendant's admitted use of methamphetamine on May 3, 2019, this is a Grade C violation.

Based on the same methamphetamine use, Violation #2 charges Defendant with violating the conditions that he not commit another federal, state, or local crime and that he not unlawfully possess a controlled substance. Noting the Sixth Circuit's decision that use of a controlled

substance includes possession, the report characterizes Defendant's methamphetamine use as a violation of KRS § 218A.1415, first-degree possession of a controlled substance, a Class D felony. This is a Grade B violation.

Violation #3 charges a violation of Special Condition #10, which required Defendant to complete four months at a residential re-entry center. Based on his termination from Dismas Charities on May 7, this is a Grade C violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on May 9, 2019, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 822. The United States moved for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on May 20, 2019, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 823. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* He admitted using and possessing methamphetamine, and that he was dismissed from the halfway house for that behavior. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established all three violations under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, and the sentencing materials from the underlying

Judgment. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to being an unlawful drug user in possession of a firearm, a Class C felony. *See* 21 U.S.C. § 922(g)(3); 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation with respect to Violation #2 and a Grade C violation with respect to Violations #1 and #3. Given Defendant's criminal history category of I (the category at the time of the conviction) and a Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter 7, is four to ten months.

### III.

At the final hearing, the parties argued for different penalties. The government argued for an above-Guidelines penalty of fourteen months' incarceration followed by twelve months of supervised release. The defense requested ten months of incarceration (at the top of the Guidelines Range and the same as Defendant's previous revocation sentence).

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

The government pointed to several aggravating factors in support of an above-Guidelines sentence. Defendant's prior revocation also involved methamphetamine, and the 10-month penalty did not induce compliance. Defendant was also a heavy drug user at the time of the underlying offense, which highlights his dangerousness when using drugs. Defendant's initial sentence was below his Guidelines Range. The government especially stressed that Defendant's recent drug use happened in the midst of drug rehab. Although there was no evidence Defendant brought the methamphetamine into Dismas Charities, he decided to use it instead of seeking help and alerting staff. The government considered this a flagrant disregard for the well-being of the other patients. According to the government, the only mitigating factor in this case was Defendant's acceptance of responsibility by stipulating to the violations.

The defense acknowledged that, because this is Defendant's second revocation, the penalty would almost certainly be higher than the first one. Nevertheless, the defense pointed to the Terminal Letter from the reentry program. That letter noted that Defendant had made progress on his goals, including obtaining full-time employment, reconnecting with his family, replacing negative influences in his life with positive ones, rebuilding his finances, and improving his interpersonal skills and problem-solving skills. The Terminal Letter also noted that Defendant had eleven negative drug screens prior to the positive one. The defense also stressed that Defendant had "showed up to face the music." He was willing to stipulate to the violations at his initial appearance. He admitted his drug use right away. Defendant was simply weak when confronted with meth in the halfway house. He was a "captive audience" and was not going to be a "tattle tale." Accordingly, the defense requested another ten-month sentence of incarceration.

Defendant addressed the Court. He said he tried, but he is just too weak to resist methamphetamine when it is shoved in his face. He acknowledged that he needs more treatment, and that its success requires his "total commitment."

Defendant's mother also addressed the Court. She explained that, now that her mother and husband have died, she and Defendant depend on each other. She said Defendant is "better off" with her. She would make him "straighten up" and would take him to counseling.

## IV.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The Court will recommend incarceration of twelve months and a day followed by one year of supervised release.

The first sentencing factor focuses on the nature and circumstances of Defendant's original offense. *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011). The offense was a firearm-possession charge that was driven by his drug addiction. He was part of a wide-ranging drug distribution conspiracy. The charge to which he pleaded guilty underrepresents his criminal activity. Despite his low criminal history score, the circumstances of his underlying offense show that his drug abuse can open the door to other crimes.

Defendant's history and characteristics includes his prior revocation, which involved nine violations. Defendant's *pretrial* release was also revoked when he left a treatment facility very

shortly after arriving.[2] Defendant did experience tragedy in his youth, and his male role models let him down. Yet he needs to take responsibility for his actions and choose to avoid using and being around drugs.

A significant term of imprisonment is needed to deter future criminal conduct and protect the public because Defendant has a history of addiction-fueled crime, even when on supervised release, as indicated by his prior violation conduct.

The Guidelines suggest that the primary wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Defendant is an addict who succumbed to temptation when methamphetamine was offered to him. However, the circumstances are unusual in that he was in a recovery center surrounded by other addicts receiving treatment. The fact that Defendant violated while in the midst of the treatment the Court provided to help him overcome the addiction exacerbates the breach of the Court's trust beyond the mere drug use itself.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a sentence above the Guidelines Range of four to ten months. When varying

---

[2] Defendant received a three-month downward variance at his original sentencing. The Guidelines suggest it is appropriate for the Court to take this time back upon revocation. *See* USSG § 7B1.4 cmt. 4. At the prior revocation the Court started in the middle of the Guidelines Range and added back the three months for Defendant's downward variance at sentencing to obtain an imprisonment term of ten months. D.E. 799 at 8. So those three months need not be added again.

from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).  The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

In this case, a revocation sentence of twelve months and one day appropriately addresses the sentencing factors.  *See* 18 U.S.C. § 3583(e).  First, this is Defendant's second revocation, and his sentence last time was at the top of the Guidelines Range.  It is appropriate to incrementally increase the sentence for subsequent violations.  Second, the sentence of twelve months and a day will provide Defendant an incentive to do well so he can earn good time credit.  The Court remains hopeful that Defendant can improve, and this incentivized sentence is an expression of that hope.  The Court finds this sentence is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis.  *See* 18 U.S.C. § 3583(e).

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b), (h).  The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h).  Subtracting his previous 10-month revocation sentence from the 36-month statutory maximum, Defendant's maximum remaining term of supervised release is twenty-six months, minus any new term of imprisonment imposed upon revocation.  *See United States v. Brown*, 639 F.3d 735, 737–38 (6th Cir. 2011) (interpreting § 3583(h)).

Because the Court recommends twelve months and one day of incarceration, the remaining available supervision is fourteen months minus one day. The Court will recommend twelve months because a year should be adequate time to assist Defendant in continuing to pursue the goals outlined in his Terminal Letter. The Court also recommends that, upon release, Defendant be assessed by the USPO for the possibility of inpatient treatment. Defendant is reminded that treatment can only be as effective as his commitment to change.

**V.**

Based on the foregoing, the Court **RECOMMENDS:**

(1) That Defendant be found guilty of all three violations.

(2) Revocation with a term of imprisonment of twelve months and a day, followed by a twelve-month term of supervised release.

(3) An added condition that Defendant, upon release, be immediately assessed by the USPO for the possibility of inpatient drug abuse treatment.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1) and Chief Judge Caldwell's streamlined objections period for revocation cases, within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Chief Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 22nd day of May, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge